UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIA PRISZA,

    Plaintiff,

-vs-

TACO BELL CORP.,

    Defendant.
_____/

Case No. 09-

Hon.

Darcie R. Brault (P43864)
DIB, FAGAN & BRAULT, P.C.
Attorneys for Plaintiff
25892 Woodward Avenue
Royal Oak, MI 48067-0910
(248) 542-6300
dbrault@dibandfagan.com
_____/

## COMPLAINT AND JURY DEMAND

### JURISDICTIONAL ALLEGATIONS

1. Plaintiff ANTONIA PRISZA is an individual residing in the City of Wyandotte, County of Wayne, State of Michigan.

2. Defendant TACO BELL CORP. is a foreign corporation, conducting business throughout the County of Wayne, State of Michigan.

3. The events complained of herein occurred in the State of Michigan.

4. This Court has jurisdiction, pursuant to 28 U.S.C. § 1331, of Plaintiff's federal law claims under the Family Medical Leave Act, 29 U.S.C. § 2611 *et seq* (hereinafter referred to as "FMLA") and under 42 U.S.C. § 1981.

5. This Court has supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. Section 1367.

## **GENERAL ALLEGATIONS**

6. Plaintiff PRISZA's race is Hispanic.

7. Plaintiff PRISZA became employed by Defendant TACO BELL CORP. in February of 1988.

8. During her nearly twenty years of employment with Defendant TACO BELL CORP., Plaintiff PRISZA held various positions, including Team Member, Shift Manager, Assistant Manager, Restaurant Manager, Training Manager, and her last position of District Manager (or Area Coach).

9. PRISZA's employment history over the course of nearly twenty years indicates that Defendant TACO BELL CORP. was generally satisfied with her performance, promoting her on five occasions.

10. In 2005, PRISZA's direct supervisor retired and was replaced by Kim Lajiness, Market Manager.

11. PRISZA was familiar with Lajiness, in part, because she had been her peer, and in part, because PRISZA's twin sister, also Hispanic, had complained about Lajiness.

12. Beginning in early 2006 PRISZA noticed that Lajiness treated her differently compared to other workers, scrutinizing her work and looking for faults.

13. Lajiness undermined PRISZA in dealing with PRISZA's subordinates.

14. Lajiness threatened to realign her stores.

15. In June of 2006, after a particularly upsetting meeting with Lajiness, PRISZA made a complaint to Human Resources about Lajiness' treatment of her,

specifically advising that Lajiness was treating her differently compared to other workers, in much the same manner as Lajiness had treated her sister, Lisa Brown.

16. In the Summer of 2006, Lajiness accused PRISZA of mistreating subordinates, which PRISZA emphatically denied.

17. Lajiness specifically advised PRISZA that one of her subordinate managers had complained to her that she was concerned that PRISZA would retaliate against her for making a complaint.

18. The subordinate manager in question confirmed that she never made such a complaint to Lajiness or otherwise.

19. PRISZA became very concerned about Lajiness' motives, as it was clear that she intended to force her from her position with Defendant TACO BELL CORP.

20. PRISZA complained to her Human Resources Manager that Lajiness had falsely accused her of intimidating subordinates and that she was worried about her job.

21. Lajiness told PRISZA she did not believe anything that PRISZA told her and that she was a "liar," repeatedly.

22. Lajiness threatened PRISZA, indicating that her second level supervisor was watching her "very closely."

23. In October of 2006, PRISZA again contacted the Human Resources Manager and advised her that Lajiness was threatening her employment.

24. In November of 2006, while working in a store with Lajiness, PRISZA witnessed Lajiness interacting with the workers in a very negative manner. In a meeting to discuss why the day did not run smoothly, Lajiness stated that she felt "like she was in Mexico" and that "we need a more diverse team."

3

25. Lajiness advised the Store Manager that he had "too many Hispanics working" and that his team was not diverse enough.

26. On November 27, 2006, Lajiness threatened that PRISZA's performance evaluation would be below target at which time PRISZA advised that she wanted someone from Human Resources to be involved in the discussion.

27. Lajiness then threatened to place PRISZA on a "Final Written Warning."

28. PRISZA advised Lajiness that she believed Lajiness was retaliating against her for attempting to involve Human Resources.

29. On November 27, 2006, PRISZA again complained to Human Resources that Lajiness was targeting her for termination and related the "too many Hispanics" comment.

30. Upon information and belief, Human Resources informed Lajiness of PRISZA's complaint.

31. On January 3, 2007, Lajiness issued disciplinary action against PRISZA via an "Employee Consultation Memorandum," accusing PRISZA of failing to inform Defendant of a drug possession charge against an employee.

32. On January 3, 2007, Lajiness also issued disciplinary action against PRISZA via an "Employee Consultation Memorandum," accusing PRISZA of directing an employee to violate "cash policy."

33. On January 25, 2007, Lajiness gave PRISZA a "below target" performance appraisal with negative subjective comments.

34. In mid-January 2007, PRISZA became pregnant.

35. PRISZA requested maternity leave for the period beginning October 18, 2007.

36. Lajiness made comments regarding the length of time she planned to be on leave, indicating on several occasions that she did not expect PRISZA to return from leave.

37. On July 15, 2007, PRISZA became aware that one of her subordinate managers was missing a deposit.

38. PRISZA immediately contacted Lajiness.

39. Plaintiff PRISZA started her maternity leave, as planned on October 18, 2007.

40. In December of 2007, Plaintiff PRISZA learned that a reporting change would occur when she returned to work, such that Lajiness would no longer be her direct supervisor.

41. PRISZA returned from her maternity leave on January 2, 2008.

42. On January 3, 2008, PRISZA was asked to attend a meeting with Lajiness and the Loss Prevention Manager.

43. In the meeting PRISZA was told that an employee accused of and prosecuted for theft, had implicated her.

44. PRISZA denied any wrongdoing or involvement in the other employee's theft.

45. Defendant TACO BELL CORP. terminated PRISZA, nonetheless, on January 5, 2008.

## COUNT I
## VIOLATION OF THE FMLA

46.  Plaintiff restates and reincorporates paragraphs 1 through 45 above as if set forth fully herein.

47.  Plaintiff was an eligible employee within the meaning of the FMLA as of the date she requested her leave of absence:

   a.  Plaintiff was employed by Defendant for a time period greater than 12 months;

   b.  During the aforementioned 12 months, Plaintiff worked greater than 1,250 hours;

48.  Defendant is an employer within the meaning of the FMLA;

   a.  Defendant employs greater than 50 employees within a 75-mile radius of Plaintiff's work site.

49.  Plaintiff requested time off work for maternity leave, a qualifying leave of absence under the FMLA.

50.  Plaintiff's requested leave of absence did not exceed 12 weeks.

51.  Pursuant to the FMLA, Plaintiff was entitled to 12 workweeks of leave during a 12-month period for maternity.

52.  Defendant willfully violated the FMLA by:

   a.  Interfering with Plaintiff's right to be restored to her pre-leave position when she attempted to return to work;

   b.  Denying Plaintiff's right to be restored to her pre-leave position by terminating Plaintiff;

   c.  Retaliating against Plaintiff for having exercised her right to take FMLA leave;

   d.  Other violations, which have yet to be discovered.

53. As a direct and proximate result of these FMLA violations, Plaintiff has suffered damages including, but not limited to lost wages, employment benefits, other compensation, past and future.

54. Pursuant to the FMLA, Plaintiff is entitled to:

   a. Any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation;

   b. Interest;

   c. Liquidated damages;

   d. Attorney fees; and

   e. Other damages/remedies available under the law.

WHEREFORE, Plaintiff prays for equitable relief and Judgment against Defendant in whatever amount the Court or Jury determines to be fair, just, and adequate compensation for the injury and damages sustained, along with interest, liquidated damages, court costs, and attorney fees.

### COUNT II
### RACIAL DISCRIMINATION
### VIOLATION OF 42 U.S.C. § 1981

55. Plaintiff restates and incorporates paragraphs 1 through 54, as if set forth in full herein.

56. 42 U.S.C. § 1981 prohibits race discrimination in employment.

57. Pursuant to 42 U.S.C. § 1981, Defendants are prohibited from engaging in racial discrimination in the making, performance, modification, and termination of contracts as well as the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, including the employment relationship.

58. Notwithstanding the duties owed to Plaintiff pursuant to 42 U.S.C. Sec. 1981, Defendants discriminated against, created a hostile environment and took adverse action toward Plaintiff because of her and race, Hispanic, including, but not limited to:

   a. Treating Plaintiff differently than similarly situated Caucasian employees;

   b. Unfairly and inaccurately criticizing Plaintiff's performance;

   c. Disciplining Plaintiff more harshly than similarly situated Caucasian employees;

   d. Terminating Plaintiff's employment due, in part, to her race;

   e. Other acts of discrimination which have yet to be determined.

59. As a direct and proximate result of Defendant's discriminatory conduct toward Plaintiff, Plaintiff has suffered great injuries, which injuries have caused her pain, suffering, and mental anguish and which injuries will in the future cause her pain, suffering, and mental anguish, including, but not limited to:

   a. Loss of employment;

   b. Loss of promotional opportunities;

   c. Loss of seniority;

   d. Loss of employee benefits;

   e. Loss of wages and earning potential, both in the past and in the future;

   f. Loss of professional esteem and consequent damage to Plaintiff's professional career;

   g. Embarrassment, humiliation, inconvenience, mental anguish, indignity, outrage and disappointment;

   h. Other damages to be determined.

60. The above-referenced discriminatory conduct by Defendant toward Plaintiff was malicious and/or engaged in with reckless indifference to her federally protected civil rights, and, as a result, Plaintiff is entitled to punitive damages.

WHEREFORE, Plaintiff prays for Judgment against Defendant for whatever amount the Court or Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs and attorney fees.

### COUNT III
### RETALIATION
### VIOLATION OF 42 U.S.C. § 1981

61. Plaintiff restates and incorporates paragraphs 1 through 60 above, as if set forth fully herein.

62. It is a violation of 42 USC § 1981, to retaliate or discriminate against a person because the person has participated in a charge of racial discrimination and/or opposed being subjected to racial discrimination.

63. Plaintiff made internal complaints of race discrimination.

64. Defendant unlawfully retaliated against Plaintiff because of the protected activity by:

    a. Unfairly and inaccurately scrutinizing Plaintiff's performance;

    b. Disciplining Plaintiff;

    c. Terminating Plaintiff from her employment;

    d. Other acts of retaliation to be determined through discovery.

65. As a direct and proximate result of Defendant's discriminatory conduct toward Plaintiff, Plaintiff has suffered great injuries, which injuries have caused her pain,

suffering, and mental anguish and which injuries will in the future cause her pain, suffering, and mental anguish, including, but not limited to:

    a. Loss of employment;

    b. Loss of promotional opportunities;

    c. Loss of seniority;

    d. Loss of employee benefits;

    e. Loss of wages and earning potential, both in the past and in the future;

    f. Loss of professional esteem and consequent damage to Plaintiff's professional career;

    g. Embarrassment, humiliation, inconvenience, mental anguish, indignity, outrage and disappointment;

    h. Other damages to be determined.

66. The above-referenced discriminatory conduct by Defendant toward Plaintiff was malicious and/or engaged in with reckless indifference to her federally protected civil rights, and, as a result, Plaintiff is entitled to punitive damages.

WHEREFORE, Plaintiff prays for Judgment against Defendant for whatever amount the Court or Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs and attorney fees.

## COUNT III
## RACIAL DISCRIMINATION
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

67. Plaintiff restates and incorporates paragraphs 1 through 66, as if set forth in full herein.

68. Michigan's Elliot-Larsen Civil Rights Act, MCL 37.2101, *et seq.* ("ELRCA") prohibits race discrimination in employment.

69. Defendant violated the ELCRA by:

   a. Subjecting Plaintiff to a hostile work environment;

   b. Treating Plaintiff differently than similarly situated Caucasian employees;

   c. Unfairly and inaccurately criticizing Plaintiff's performance;

   d. Disciplining Plaintiff more harshly than similarly situated Caucasian employees;

   e. Terminating Plaintiff's employment due, in part, to her race;

   f. Other acts of discrimination which have yet to be determined.

70. As a direct and proximate result of Defendant's discriminatory conduct toward Plaintiff, Plaintiff has suffered great injuries, which injuries have caused her pain, suffering, and mental anguish and which injuries will in the future cause her pain, suffering, and mental anguish, including, but not limited to:

   a. Loss of employment;

   b. Loss of promotional opportunities;

   c. Loss of seniority;

   d. Loss of employee benefits;

   e. Loss of wages and earning potential, both in the past and in the future;

   f. Loss of professional esteem and consequent damage to Plaintiff's professional career;

   g. Embarrassment, humiliation, inconvenience, mental anguish, indignity, outrage and disappointment;

   h. Other damages to be determined.

WHEREFORE, Plaintiff prays for Judgment against Defendant for whatever amount the Court or Jury determines to be fair, just, and adequate compensation for the

injuries and damages sustained, together with interest, costs and attorney fees.

## COUNT V
## RETALIATION
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

71. Plaintiff restates and incorporates paragraphs 1 through 70 above, as if set forth fully herein.

72. Pursuant to MCL 37.2701(a), it is a violation of the Elliot-Larsen Civil Rights Act ("ELCRA") to retaliate or discriminate against a person because the person has participated in a charge of racial discrimination and/or opposed being subjected to racial discrimination.

73. Plaintiff opposed race discrimination.

74. Defendant unlawfully retaliated against Plaintiff because of the protected activity by:

    a. Unfairly and inaccurately scrutinizing Plaintiff's performance;

    b. Disciplining Plaintiff;

    c. Terminating Plaintiff from her employment;

    d. Other acts of retaliation to be determined through discovery.

75. As a direct and proximate result of Defendant's discriminatory conduct toward Plaintiff, Plaintiff has suffered great injuries, which injuries have caused her pain, suffering, and mental anguish and which injuries will in the future cause her pain, suffering, and mental anguish, including, but not limited to:

    a. Loss of employment;

    b. Loss of promotional opportunities;

    c. Loss of seniority;

      d. Loss of employee benefits;

      e. Loss of wages and earning potential, both in the past and in the future;

      f. Loss of professional esteem and consequent damage to Plaintiff's professional career;

      g. Embarrassment, humiliation, inconvenience, mental anguish, indignity, outrage and disappointment;

      h. Other damages to be determined.

WHEREFORE, Plaintiff prays for Judgment against Defendant for whatever amount the Court or Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs and attorney fees.

Respectfully submitted,

DIB, FAGAN AND BRAULT, P.C.

By: /s/ *Darcie R. Brault*
    Darcie R. Brault  (P43864)
    Attorney for Plaintiff
    25892 Woodward Avenue
    Royal Oak, MI  48067-0910
    (248) 542-6300
    dbrault@dibandfagan.com

Dated:  March 11, 2009

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIA PRISZA,

    Plaintiff,

-vs-

TACO BELL CORP.,

    Defendant.
_____/

Case No. 09-

Hon.

Darcie R. Brault (P43864)
D<small>IB</small>, F<small>AGAN</small> & B<small>RAULT</small>, P.C.
Attorneys for Plaintiff
25892 Woodward Avenue
Royal Oak, MI 48067-0910
(248) 542-6300
dbrault@dibandfagan.com
_____/

## PLAINTIFF'S DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, by and through her attorneys, D<small>IB</small>, F<small>AGAN AND</small> B<small>RAULT</small>, P.C., and hereby demands trial by jury on the above matter.

          Respectfully submitted,

          D<small>IB</small>, F<small>AGAN AND</small> B<small>RAULT</small>, P.C.

          By:  /s/ *Darcie R. Brault*
              Darcie R. Brault  (P43864)
              Attorney for Plaintiff
              25892 Woodward Avenue
              Royal Oak, MI  48067-0910
              (248) 542-6300

Dated:  March 11, 2009          dbrault@dibandfagan.com